**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**United States of America,**

        **Plaintiff,**

v.                                                   **Case No. 3:03-cr-022
Judge Thomas M. Rose**

**Kenneth Cunningham,**

        **Defendant.**

---

**ENTRY AND ORDER DENYING MOTION TO RECONSIDER
09/07/2005 ORDER.** (DOC. 64).

---

Pending before the Court is United States' Motion to Reconsider 09/07/2005 Order. Doc. 64. Therein, the Government requests that the Court reconsider the award of a new trial to Kenneth Cunningham. A jury had found Cunningham guilty of a charge that he was in possession of a purse containing feminine hygiene products and a firearm located in the locked glove compartment of a car he had borrowed. After he was convicted, a Jennifer Heflin approached the police to admit that she, who is also under a disability from owning a firearm, was the person who had placed the purse in the glove compartment. Upon learning of this from the Government, Cunningham filed a motion for a new trial, doc. 39, which the Court granted. Doc. 63.

The decision to grant a new trial was based upon Federal Rule of Criminal Procedure 33, which allows for a new trial whenever the interest of justice so demands, and case law interpreting it, including *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986), which instruct that justice

demands new trials when "(1) the new evidence was discovered after trial; (2) the evidence could not have been discovered earlier with diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal." The Government asserts the Court managed to misapply three of these four factors.

First the Government asserts that Jennifer Heflin's admission that the gun was hers is not material, as "it would be inadmissible as substantive evidence at a retrial." Doc. 64 at 2 This assertion is somewhat striking, as the Court has observed the Government put into evidence similar statements on many occasions.

Defendant can call Heflin to testify. She will either testify, or assert her Fifth Amendment rights. If she testifies the information is in evidence. If she denies that the gun is hers, Federal Rule of Evidence 613 allows Cunningham to question her regarding her admission to the Government. Once Heflin has been given an opportunity to explain the statement, Cunningham can put on extrinsic evidence of the prior inconsistent statement. Fed. R. Evid. 613(b). If Heflin refuses to testify, Rule 804(b)(3) allows Cunningham to call the officers who heard Heflin's statements, and question them about it. It is thus possible to put this statement before a jury in a new trial.

The Government also submits that Cunningham has not satisfied the requirement that proffered new evidence could not have been discovered earlier with due diligence. With the prescience of a Monday morning quarterback, the Government asserts that, had Cunningham exercised due diligence, he would have discovered the testimony of Heflin, whom Cunningham had seen all of three times in his life, Doc. 58 at 3, prior to trial simply because they met once while

Cunningham was in jail.[1] While the Court agrees that, in hindsight, it seems odd for Cunningham's counsel to have not questioned the owner of the car, it hesitates to find lacking in diligence a representation that would not constitute ineffective assistance of counsel in the context of a *habeas corpus* petition.

The Government's assertion that Cunningham's counsel failed to exercise due diligence would carry greater heft had the United States Attorney, in its attempt "to ensure fair and impartial administration of justice for all Americans" U.S.D.O.J. Mission Statement, asked the owner of the automobile, who filed an innocent owner affidavit, if anyone besides Cunningham had recently driven the car and interviewed anyone the owner identified. If the Government did not think it necessary to ask these questions of a man who came to them in hopes of having his car returned, it seems strange to find deficient the efforts of Defendant's counsel for failing to search out this man for questioning. The Court is as loath to decry the efforts of the Government as it is that of defense counsel.

Neither will the Court establish a rule that a defendant has an affirmative duty to interview everyone he meets from indictment to trial. There are many distinctions between the few cases the Government sites on this point and the instant case. *United States v. Gaitan-Acevedo*, 148 F.3d 577 (6th Cir. 1998) involved newly found evidence from a co-defendant who had already pleaded guilty.

---

[1] Heflin describes this "meeting" as her having signed in to meet Cunningham, only to have him refuse to talk to her. Heflin Trans., Doc. 57 at 9-10. Cunningham describes the visit as Heflin arriving, and telling him that his "Baby" didn't have her ID with her, and sent Heflin in her stead. *Id.* at 29-27. Cunningham did not believe Heflin, and asked the correctional officer to cancel the visit. *Id.* At the Montgomery County Jail, inmates are allowed one female visit a week. *Id.* Cunningham believed that Heflin, whom he barely knew, was trying to deprive his "Baby" of their once-a-week visit in an attempt to sow discord between them. (Cunningham's "Baby" appears to be one of three other women he was seeing at the time, one of whom had borne him a child. *Id.*)

*Gaitan-Acevedo* is distinct because co-defendants are much more clearly likely to have information concerning a crime than the broad class of people met after indictment and prior to trial. Additionally, individuals placed beyond the reach of the law for the actions in question by the protections of double jeopardy have diminished reliability. Moreover, "during trial Diaz [the co-defendant exculpatory witness] wrote a letter exculpating another co-defendant--a letter that at least would have put [appellant] on notice that Diaz held information that could have exculpated him as well." *Id.* at 589. The Government makes no similar assertions regarding Heflin.

In *United States v. Turner*, 995 F.2d 1357 (6th Cir. 1993), the movant failed on every factor of the test for granting new trial. As regards due diligence, the witness, whose statement did not exculpate the defendant in any event, was defendant's brother-in-law. Here, it is someone Cunningham had "seen…2 or 3 times." Doc. 58 at 3. Even if *Turner* hinged on the relationship between the exculpatory witness and the defendant, Cunningham had no relationship with Heflin.

Finally, the Government points out that the Court's overly diplomatic prior order merely "opined that 'it believes the evidence has the potential of producing an acquittal.'" Herein, we have striven to speak more directly: the Court hereby finds that the evidence would likely produce an acquittal. A man was charged with possessing a firearm contained in a purse with female hygiene products locked in the glove compartment of a car he had borrowed. The defendant did not possess the key to the glove compartment. A woman has subjected herself to criminal liability by asserting that she put the purse in the glove compartment when she borrowed the car earlier. This testimony has indicia of reliability and tends to exculpate defendant. If the jury had heard this testimony in the course of Cunningham's trial, it would likely have acquitted him.

Rule 33 grants this Court the authority to "vacate any judgment and grant a new trial if the interest of justice so requires." In this case, the fair and impartial administration of justice demands it. Therefore, The United States' Motion to Reconsider 09/07/2005 Order, Doc. 64, is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, October 20, 2005.

                                              s/Thomas M. Rose
                                             _____
                                                 THOMAS M. ROSE
                                        UNITED STATES DISTRICT JUDGE